Next case is Mabey Bridge v. Alan Biehler Next case is Mabey Bridge v. Alan Biehler You can't rely on the clocks in this building. You have to learn that. This is a government building. Indeed, Judge. Indeed. Good morning. My name is James Campbell. I'm with the law firm of Campbell & Kimball. Edwards & Conroy and I represent the appellant in this case, Mabey Bridge & Shore Company. We're appealing from the grant of the summary judgment in the district court regarding the contract issue that we've raised. We've appealed on four different issues. The preemption issue, the commerce clause, and it's the international aspect of that, the contracts clause, and equal protection. I'd like to address my remarks to the letter that the court sent to the parties regarding, and I'll focus my remarks on the contracts aspect of this. And to that point, Your Honors, Was PennDOT a party to the contract? PennDOT, based upon this record, Your Honor, the contract is not in the record. Based upon the totality of what is in this record, PennDOT was not a party to the subcontract. In your position, they were not. Were they a third-party benefit? A third-party beneficiary, again, is not set forth in the record. It is a factual inquiry. Do we need that contract to decide this case? Well, it depends upon how Your Honors are going to look at the issues regarding whether or not this is a breach of contract issue or whether or not the actions of PennDOT and the state through its agencies Because wouldn't the law depend upon whether or not they were a party to it? I mean, doesn't the Supreme Court generally take the position that the contracts clause gives way to the police power, but if the government is a part of a contract, then they look at it a little differently, don't they? That's for sure, Your Honor. And I think in the context of this case, the state of Pennsylvania and PennDOT were so involved in this process. I mean, they control what is and is not in those subcontracts. They control the contract and the dealings with the contractor. So there is no question in this case, Your Honor, that PennDOT is acting as a legislative body and this is beyond the simple breach of contract issues that would be raised by those. In terms of the third-party beneficiary, again, the facts supporting that are not in the record. I believe that the case law is such that you require some factual discovery on that. In the case, as you know, maybe Bridge was doing business with the state for over 20 years, back before 1990. How about PennDOT's decision? Is that a decision to suddenly change to the American Steel? Is that an exercise of legislative power? Are they acting like the legislature when they do that? It absolutely has to be the case that they were acting as the legislature. Now, does that go through formal rulemaking when they did this? No. When this decision by PennDOT came down on April 29, 2010, there was absolutely no transparency. There was no formality to it. Is this a decision that we would expect to see simultaneously adopted by all PennDOT districts? Was this unique to this particular unit that you were dealing with? In fact, the initial inquiry, or the initial declaration for wherever that came from on April 29, 2010, it was issued to this contract regarding maybe Bridge directly. It was subsequently, after that, adopted by the bridge chief engineer and an assistant district person that went out identifying first maybe Bridge in particular and then temporary Bridges in general. So this is pervasive policy now, PennDOT, throughout the country? It is as to temporary. The only temporary issue that was addressed was temporary Bridges. The interesting thing about this is when it came down, on that April 29, 2010, it was in the middle of a contract. It was a contract that was set forth in December 2009. It was approved by the state. The subcontract was approved, and the legislative actions of PennDOT caused that contract. Were there federal funds in this project? Your Honor, I do not know. Doesn't the position of the federal government vary according to that? If it's federally funded, they don't want the state restrictions to be more severe than the federal restrictions, right? Absolutely. I would have to look at the records. There's a lot we need to know here. It seems strange. Do we know what's going on here after the course of dealing for so long with this abrupt switch? Honestly, Your Honor, that's why, in part, the summary judgment was improper. The lack of transparency, the lack of formality, the need to understand why that April 29 decision came down in the back and after it, who did it, why, what was the procedure, on what basis did this 20-year course of dealing among the parties? And to know whether this was a legislative act or just a gigantic whoops by PennDOT. Again, Your Honor, I do not believe there's any way that you could look at this other than a legislative action. Why? Why? Because the act itself, adopted in 1978, Federal Act 1982, I believe, so afterwards, but the course of dealing after that is temporary bridges. All these temporary things were excluded from the act. But that's not what the state law said, did it? The state law says it's basically everything, down to a screwdriver, a hammer, buildings on the property, everything. But that's a law passed by the legislature. It may be stupid. In fact, it could well be in this commonwealth on occasion. But nevertheless, how can PennDOT, we've got the legislature, passes a law that says you can't use foreign steel on temporary bridges. How could PennDOT legislatively overrule that? That's not the way the way it works. Well, they did, Judge. In 1985, they issued this written publication. I think it's Rule 208 or Publication 208. 408, right? 408. But they're allowed to do that, aren't they? But that changed the law, Your Honor. There's no way that you could have it. Otherwise, the... I'm sorry. They have a right to do that, right? I mean, they can issue publication 408. What I'm wondering is, why would they apply that retroactively to contracts that your client had already signed? Actually... You know, you are much stronger footing regarding your Contracts Clause argument because, as you point out, you signed up in December, I think, of 2009. This edict comes down on April 29 of 2010. Yes. So can't that April 29 edict apply prospectively under the law? I just need to clarify. The 208 or the rule that's issued, the written publication from PennDOT, that was issued in 1985. Okay. In 1985... Let's make sure we're talking about the same one. My notes say 408. And what that indicates is if steel products are used as a construction tool and will not serve as a permanent functional use in the project, compliance with the Steel Act is not required. Is that the one you're talking about? That is what I'm talking about, Your Honor, and my understanding is that that was in place since 1985. Okay, so there... But you're talking about 409, which is trumped, isn't it, by 410? 409 is the Code of Federal Regulations, Your Honor. That's right, the regulation. That's right, that's the preemption argument. Oh, I'm sorry. Okay, but it's relevant to this because it's our position that the Steel Act is preempted specifically by that Code of Federal Regulations. No, I misspoke. You're absolutely right on that. The Steel Act is preempted by the regulation. That's impossible, though, right? Well, the statute... I'm going to show you my cards and tell you why I'm wrong. I have no idea what my colleagues think, but here are my cards. The statute says, the BAA, the federal statute, right, says what it says, but it has a carve-out that says states are free to be as protectionist as they want to be. I'm paraphrasing. And so the federal law requirement in the BAA sets a floor, and the states can be more protectionist if they wish. The regulation is a little bit vague. It seems to perhaps suggest that temporary bridges are not covered. And then there's a policy statement that really helps you. The policy statement says your bridges are not covered. My question is, how can that policy statement have legal effect when the statute itself, from which the regulation and the policy statement are enabled, specifically allows Pennsylvania to be as protectionist as it wants to be? I disagree with that judgment. Here's why. The statute speaks in terms of more restrictive requirements. The regulation and the requirements, the nature of the steel, how you do your bidding, those types of things, and I'll get to a further definition of it. The regulation 409B states that the states cannot be more protective or I forget the actual term. Restrictive, they can't be more protectionist. The language is different. The regulation specifically goes to being more protectionist. The statute, as defined by some statements issued by the Federal Highway Group, as defined, you'll find it on page six of the district court's opinion, that if the states are going to be more restrictive, they need to issue a legal opinion, they need to prove that it's within the bounds of state law, and they need to establish that it doesn't violate the bidding requirements. So the statute and the regulation can be read together. Do you know whether or not they did that in this case? In this record, there is no legal opinion, there is no statement. That may be, but you're the one that's asserting the invalidity on it. It's a review by De Novo, Your Honor, and given that it would be the state's burden by that statute, it's not established in this record. But you don't cite B2 of the regulations though. 635.410B2 explicitly authorizes federal highway construction projects when states impose stricter biomedical requirements. That's a green light to the states to be more protectionist. That's defined in the Federal Highway Manual, cited on page 6 of the District Court Opinions, as being other types of products. They cite rubber products, aluminum, and some other things. It's not specific. So you're saying B2 does not apply to these temporary bridges? I'm saying the temporary bridges, as we set forth in our preemption argument, are specifically exempted by the federal statutory scheme. And everything you look at in that statutory scheme, in the Buy America Act, including the material in the Federal Register, the comments about the statute, this regulation establishes that temporary bridges and temporary things in general are excluded from the federal statute on this issue. And it said, given that regulation... protectionist. It says that they can impose stricter requirements, and that statement is further defined by the Federal Highway Manual, or Procurement Manual. I forget the exact title, Judge, but... So stricter requirements... You're saying the Steele Act, then, isn't valid? Because it doesn't impose stricter requirements? I'm saying the Steele Act is preempted by the federal legislation because it extends the temporary bridges, in the context of this case. But it's like the statute that specifically refers to temporary bridges. The statute. It's not in the statute, Judge. The statute issues... Well, how can a statute that allows states to impose stricter requirements... And then when the state goes ahead and imposes stricter requirements, how can a regulation then come on top of that and invalidate it? That's an odd species of preemption, isn't it? I don't believe so. I believe that federal regulations can and have, in automotive litigation, for instance, have specifically been used to preempt things like claims regarding airbags, seat belts, etc. But this statute... Even when a statute says that states can legislate their... Exhausted my knowledge on what I read in the paper, Judge. Then you would at least agree that this could be ambiguous. There's no question that when you read a statute that says that the states can impose further or additional requirements and then the regulations issued pursuant to that statute by the authority given to it by Congress say they can't make further preclusions, that is difficult to... But again, for the preemption analysis, you've got the 409B, which apparently is trumped by 10, 410. And if it's ambiguous as to whether that is so, there still can be no preemption. Again, Judge, I think you can breed these regulations and the statute together such that the ambiguity is eliminated. There's no question that that regulation says that you cannot impose stricter prohibition. Great. Thank you. Did you use it for rebuttal time? I did. Okay. Thank you very much. Thank you, Mr. Campbell. Ms. Tesoro? I have in my notes that those regs don't change it. I think there's a history. I think so. I'm Claudia Tesoro. I'm from the Attorney General's Office, and I'm here on behalf of the Advolee. I should introduce... I'm sorry. Could you pull that microphone down a little lower? You might have to really push it hard. There you go. Thank you. I was about to say that the Secretary of Transportation, just for the record, is now Barry J. Shoke. Alan Beeler has been succeeded on. Mabee Bridge, which apparently benefited for years from PennDOT's prior and perhaps loose interpretation of what it could and couldn't do, is now claiming that its constitutional rights were violated because PennDOT evidently reexamined its practices in light of the explicit and long-standing state statute. You have to feel a little sorry for them, don't you? Well, I wouldn't call it feeling sorry. I think when you said it was a big whoops, that may indeed be just what it is. What happened here? Why the change in course, and why was it not prospective? Why is it so important to affect the four contracts that had already been signed and approved? Well, I don't think our record tells us anything about four contracts. The one that Mabee was a subcontractor on is the one where we have the letter that says you can't do this after all. And that was a letter to the contractor, incidentally, not a letter to Mabee, the subcontractor. I can't tell you any more than that. Do you know whether PennDOT usually considers itself to be a party to a subcontract like that? Whether you would be a third-party beneficiary? He says you weren't, and I believe that's what he's saying. Do you agree with that? I agree that the contract, whatever it was, was between PennDOT and the contractor, the company's name I forget. And even the complaint says that Mabee Bridge was a subcontractor. When I got the court's letter, I tried to figure out whether anybody would be a third-party beneficiary with respect to anybody else, quite frankly. And it doesn't seem to me that third-party beneficiary is a relevant concept here at all. But I did look... Suppose we thought it was. What would be your position? You'll admit that the way the Supreme Court views exercises of state power that affect contracts depends upon whether the state's a party to the contract, don't they? Well, I don't think you get to that stage until you get over the preliminary inquiries that are necessary for an impairment of contract clause. Well, suppose I wanted to know the answer, because would you be willing to help me with that? I'm trying to, Your Honor. Would they be a party to the contract? You're saying no or yes, or you don't know? I'm saying that PennDOT is a party to the prime contract, not the contract that Mabee Bridge... Right, but not the subcontract. Right. Could they be viewed as a third-party beneficiary of the subcontract? You must have had this come up. No? Okay. Maybe it does come up, but what I wanted to tell you is that in a decision of this court called Pierce Associates, there's a rather helpful summary of construction contracts and who's a prime contractor and who's a subcontractor. And the cite to that, it's not in our brief, because obviously the letter came after briefing. They're a subcontractor. I don't think we have any trouble with that. Just so you know what I'm talking about, 865 F. 2nd, 530, at page 536, there's a detailed extract from Corbin on contracts, and the key sentence there is, it's describing a contractor with the government. A subcontractor is not a beneficiary of the government's promise to the contractor to pay the cost of the contract. Even though the amount payable to the subcontractor is reckoned as part of the cost, the government made no promise to pay anything to the subcontractor. Let's talk about the subcontractor. Is the Commonwealth of Pennsylvania or the Department of Highways or PennDOT, could they be viewed as a third-party beneficiary? No. I'm sorry? No. And the next sentence that I was going to read specifically says, for similar reasons, the government is not a beneficiary of a subcontractor's promise to the contractor. And what's the name on that case? Pierce Associates, Inc. versus the Nemours Foundation. Does the state need to be a party? A state can impair the obligations of contracts, even a contract it's not a party to, right? Knight and Amicus. I'm sorry, I don't understand that reference. Let me be hypothetical. Mabee Bridge contracts with XYZ Company, and XYZ Company is going to pay Mabee Bridge $3 million to build 30 temporary bridges. PennDOT wakes up one morning and issues a publication notice that says any temporary bridge contracts in excess of a million dollars are void. Doesn't that violate the contracts clause? Well, I don't think it's quite that simple because you have to decide, is there a contract? Yes. I just told you there's a contract between Mabee Bridge and XYZ Corporation for $3 million. PennDOT issues a publication notice that says any contracts entered into in the future and any contracts entered into within the past 12 months for bridges with steel in excess of a million dollars are void. Isn't that an obvious violation of the contracts clause? No, because the contracts clause only comes into play, as I think came out earlier this morning, when there has been a change in state law. And if PennDOT, an executive agency, makes an internal executive decision... Because the cases that I've read where the contracts clause claims fail are ad hoc disputes. For example, someone doesn't get a permit. There's some executive action taken by a board of supervisors, etc., and that hurts someone who has a contract. And those cases consistently hold that that doesn't impair the contracts because that's not passing a law. Tell us why this publication 409, I'm sorry, the most recent statement, Reversal Course, why is that not a law when it seems to apply prospectively and it seems to be a principle of general applicability? Because PennDOT is an executive agency and its actions are actions of an executive agency. I am not saying that executive agencies don't, in some circumstances, issue regulations, let's say, that have the force of law. But that's not what happened here. What happened here, at most, was an internal executive agency decision that resulted from somebody, we don't really know who, saying, oops, what have we been doing all this time? The Steele Act is pretty clear. They reinterpreted the Steele Act. That would be the argument, wouldn't it? They did reinterpret the Steele Act. The Steele Act hasn't changed. And, in fact, this publication 408 hasn't changed either. Right, and it seems to be able to do that prospectively, but what about the reliance interest of Maybe Bridge? I mean, Maybe Bridge entered that contract in December of 2009. Based upon the rules of the game that PennDOT chooses to change and PennDOT may be perfectly able to do that without a preemption problem, but doesn't it need to do so prospectively? How can it just take away the rights that it contracted for back in December of 2008? I don't know if there is any recourse by Maybe Bridge against the contractor or against PennDOT even, but whatever it is, it's not a constitutional claim based on the contracts clause because the change that occurred here was not a change in the law. It's not a law. The contracts clause has that word right in it. No state shall issue a law... Well, what about regulations? Are they laws? Sometimes they are. This is the problem we have, I think, is that we have an entire administrative state. Let's look at the federal level, right? I mean, that's not... The code of federal regulations, those are not called statutes. They're not called laws. They're called regulations. Are you suggesting that any one of the alphabet soup agencies through notice and comment could pass a regulation that adversely affected the rights of contracting parties and the Supreme Court would then tell us, oh, that's okay because that's not a law? I don't know. These are executive branch agencies, the Department of Labor, EPA, et cetera, et cetera, et cetera. Why is not PennDOT empowering material with those federal agencies I just mentioned? I'm not saying that in a generic sense that couldn't happen, but I'm saying that not everything that an agency does is a regulation. All right, but there are some things PennDOT does are regulations. Some things are. Okay, and shouldn't we distinguish between ad hoc things that apply for a special purpose at one instance as opposed to broad principles of general applicability? Isn't that how we should define what a law is? No, because the characteristics of an executive agency are defined by law, statute. PennDOT is one. The authority to promulgate regulations and the method for promulgating them is also spelled out as a matter of law. It's an enabling statute. Right. Okay, and how does PennDOT do? Give us an example of what PennDOT does to promulgate a regulation that might be a law and then contrast that with what PennDOT did in this case. If PennDOT, I believe this is a fair statement, if PennDOT were going to enact a regulation on any subject, and heaven knows PennDOT has many areas of responsibility, they have to publish it in the Pennsylvania Bulletin for notice and comments and so on, similar to the Federal Register. I think there is a screening process by a state court. Yeah, exactly. And none of that happened here. Not that we can see, no, and it didn't happen because it was a change in interpretation of existing law, but not a change in the law. But it does have pervasive application. This is going to be the standard throughout the Commonwealth. Until someone wakes up the next day and says, I didn't do the reading. Well, I don't know. It might be, but in a sense it's just sort of reverting to what should have been the standard all along. What the legislator said in that Pennsylvania Steel Act or whatever they call it. Right. So the bottom line is don't do business with the government. You do so at your peril. Because don't trust that the rule today might not be the rule tomorrow, and if you sign a contract in reliance upon what the rule is today, you might find yourself in a world of hurt tomorrow. Two things I have to say about that. One is that maybe Bridge didn't directly do business with the government. Maybe Bridge was a subcontractor. Secondly, what you're... There were 50 of them. 50 of them over a 20-year period. Well, so they say. But it was still a subcontractor situation on contracts that somebody else was entered into with PennDOT. This has all, through it, a theme or a flavor of estoppel. And maybe Bridge explicitly disavowed any estoppel theory as far as its claims against PennDOT are concerned. And that issue supposedly dropped out of the case. But it should be pointed out as a general principle that when anybody is dealing with the government, the person dealing with the government is obliged to know the scope of authority of the person or party that is being dealt with. And here, even if PennDOT was too ignorant to maintain the letter of the law of the Steele Act all through, maybe Bridge should have been aware of that Steele Act and should have understood that the Steele Act is known and has been, by the way, explicitly referred to as a provision for it. So the man who's sentenced to death, that he should report, he should not be a fugitive anymore. He should go into the institution and say, I'm ready to be put to death, right? I think that's kind of an excluded characterization. Well, you're saying that maybe Bridge should have basically said, here I am, you know, the law is different and we don't want to accept the logesse of this subcontract. I don't know how I can so blithely say this is that clear because, frankly, I'm not sure I understand the distinction between scaffolding and bridges. I mean, what do you mean with some hairline distinctions here? I don't know. A crane? A crane? The scaffolding and bridges thing is part of their equal protection argument, which we haven't really touched on. No, no, I'm not suggesting that equal protection is the right argument. I'm just saying that whether something is covered by the Steele Act or not is a matter that reasonable people could differ on. I don't view this as... It seems like you're suggesting that everyone who is smart should have known that Pendau was making a terrible error for 20 years and that maybe Bridges is taking advantage of this, and I'm suggesting to you that reasonable minds could differ as to what's covered, what's not covered, what's temporary, what's a tool, what is not a tool. Maybe, but the problem is the Steele Act from the get-go has said bridges and it has said both permanent and temporary. The Steele Act couldn't be more clear that temporary bridges are not covered unless they're used domestic steel. How about his argument, if I may, if you'll excuse me. He makes the argument that the federal legislation, which lets the states be more restrictive, he makes the argument that regulations adopted by the Federal Highway Department or whatever their name is, that that has narrowed that so that you no longer have to license in Pennsylvania to do this. Do you follow me? I think I do, and I think that the answer was alluded to earlier because the statute is pretty explicit. Congress is committed. As Judge Barry pointed out, echoes that and allows for stricter standards in the state, and even the Federal Highway Administration interpretation, I think it's at page 101 of the record, is consistent with that. Let me just double-check that page for you. Yeah, 101. It says states may have Buy America provisions that are more restrictive than the federal requirements as long as it's required by state law, which the Steel Act clearly is, and as long as it has contract provisions that say so. Publication 408 is standard contract provisions. Publication 408 incorporates the Steel Act. So I think however you look at it, the federal statute regulation and issuances all permit any kind of state procedures and requirements that are stricter than what the federal statute itself calls for, and therefore what went on here under this so-called new interpretation is not an issue of that preemption. It's totally permitted. It's like express non-preemption as opposed to express preemption. I see my time is up. Thank you, Mr. Sorensen. Thank you. Roberto? Mr. Campbell? Thank you. Quickly, just in terms of the four contracts that is in the record, it's at record 180 through 85. It's the Borman affidavit number. The record pages are 180 through 185. That is an affidavit from Mr. Borman, and you will find specifically facts to be accepted as true here at page 130. What about Mr. Sorensen's argument that this didn't go through any of the normal notice and comment rulemaking type procedures? Doesn't that suggest that this is not a law? It's inconceivable to me that this is not a law. This is an exercise of state power. Consistent with our law passed by the state legislature. How is that an exercise of power? Because it's redefining how they redefined the act in 1985. It's taking back the promise they made in August 2008 directly to Mabry Bridge about the interpretation of the act and how it's going to be applied. For 20 years they acted as the legislature. What is the difference between what Penn did here and what we do when we interpret a statute? I'm sorry, Your Honor. What is the difference between what Penn did here when he said whoops and what we do when we interpret a statute? Well, their actions are the force of law. They're the ones that are going to set the rules. They did set the rules, and I suppose when your honors make a decision, you set the rules as well. So it is the force of law by interpreting that statute, setting forth for everybody into the future, terminating those four contracts, terminating the contract that was approved into the future for everybody. And the issue that interpreting the letter of the law, they're not. They're not. Because if they interpret the letter of the law, it would be screwdrivers, it would be every piece of steel, it would be cranes, it would be everything. For reasons that need to be discovered, why some judgment is improper among many, that what they did and why they did it is as the force of law but was not done with any transparency or formality. Can you assume the contractor? The contractor was being directed by the government, by Penn Dock. But if the contractor has an agreement to pay you for the temporary bridges and you're really unable to preserve the temporary bridges and they don't take delivery, don't you have a breach of contract? I would have to look at the contract terms, but there may be terms regarding impossibility, actions by the state, et cetera. The answer to that, Judge, is I don't know because I haven't studied it, but I learned in law school that you can sue anybody. Thank you. We'll take the matter under advisement.